■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WILLIAM REDD, Appellant.—Appeal by the defendant from a judgment of the County Court, Westchester County (Rosato, J.), rendered February 24, 1987, convicting him of robbery in the second degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing, of

that branch of the defendant's omnibus motion which was to suppress identification testimony.

Ordered that the judgment is affirmed, and the case is remitted to the County Court, Westchester County, for further proceedings pursuant to CPL 460.50 (5).

At about 5:00 A.M. on July 6, 1986, Lincoln Lobban was walking home in New Rochelle. It was already daylight. As he walked along, a man subsequently identified as the defendant came up from behind him and asked if he knew where there was an open bar so he could get a drink. Mr. Lobban said he did not know of any but told the defendant to go to North Avenue, where a few bars were located and might be open. During this conversation, the defendant and Lobban were walking side by side.

The defendant then proceeded past Lobban, until he was approximately 20 feet ahead of him, then turned and walked back toward Lobban. Right after the defendant again passed Lobban, Lobban felt a blow to his head and found himself lying on his back on the ground. While he lay there, he felt and saw hazily the defendant go through his pocket. The defendant then left the scene.

Lobban called the police from a nearby telephone booth. Police Officer Carol Krus responded to the scene. According to Officer Krus, Lobban was bleeding heavily and speaking incoherently. Officer Krus questioned Lobban, who described his attacker as a tall black man with white pants, in his late twenties, or early thirties. The officer testified at the *Wade* hearing and at the trial that Lobban rambled again and again that he could not believe such a thing could happen to him in a nice city like New Rochelle. While they waited for an ambulance, Officer Krus heard over the police radio that a suspect had been apprehended nearby. When the ambulance arrived, Officer Krus asked one of the paramedics if Lobban could be taken to observe a suspect before being transported to the hospital. Upon receiving an affirmative response, Officer Krus informed Lobban that they were going to drive to a location where other officers had a suspect in custody who matched Lobban's description of the mugger. While en route to a parking lot of a nearby housing project where the defendant was being detained, Officer Krus advised Lobban, who was very agitated, to be sure to remain in the car and just state whether or not the suspect was, in fact, the person who committed the crime. Upon pulling into the parking lot, Lobban spotted the defendant and screamed, "that is him, that is him". The defendant was wearing off-white pants and a

darker tee shirt. He was also being held by the arms of two uniformed policemen. According to Lobban, the defendant was "resisting" the two officers. There was conflicting testimony about whether or not the defendant was handcuffed at this time. The only other black man at the scene was a third uniformed officer.

The defendant alleges that he was in the company of a female New Rochelle police officer at the time of the robbery. Both the defendant and the woman officer testified that they had been at breakfast in Larchmont before driving back to New Rochelle. The officer testified at trial that the defendant had dropped her off at 5:05 A.M.

The defendant alleges, *inter alia,* that testimony as to the showup identification should have been suppressed. We disagree. The courts have been willing to forgive irregularities in such procedures in the name of swift identifications *(see, People v Griffin,* 135 AD2d 730; *People v Jeffries,* 125 AD2d 412, *lv denied* 69 NY2d 882). Where a showup procedure takes place in close proximity to the scene of a crime, and as here, shortly after the crime, it does not deny a defendant his right to due process. Such procedures are justified because a speedy identification is preferable, and a longer detention may unnecessarily infringe on the liberty of an innocent person *(see, People v Digiosaffatte,* 63 AD2d 703).

Under the circumstances of this case the showup cannot be said to be improper. It took place within a few blocks of the crime and within 20 minutes thereof. Although the circumstances of the showup were not ideal *(see, People v Osgood,* 89 AD2d 76), they were not so egregious as to warrant suppression.

Furthermore the record reveals that there was a valid, independent source for an in-court identification. The victim and his attacker walked side by side for a few minutes while they spoke to each other; it was also daylight. Therefore Mr. Lobban's identification of the defendant as his attacker was free from any taint *(see, People v Adams,* 123 AD2d 769, *lv denied* 69 NY2d 707).

The defendant also claims error in the introduction, at the trial, of photographs taken of Mr. Lobban shortly after his hospital treatment. These photographs displayed stitches in his head and chin and bloodstained clothing. The defendant claimed that this evidence was cumulative and served no purpose other than to gain the sympathy of the jury. Graphic photographs have been admitted into evidence because they

demonstrate a material element of the crime charged *(see, People v Pobliner,* 32 NY2d 356, *cert denied* 416 US 905). Physical injury to any person who is not a participant in the crime is an element of robbery in the second degree as charged in the indictment in this case *(see,* Penal Law § 160.10 [2]). The introduction of these photographs were necessary to the proof of this element. Their introduction into evidence was not error.

We have examined the defendant's other contentions and find them unpreserved for appellate review or without merit. Mollen, P. J., Kunzeman, Rubin and Balletta, JJ., concur.